IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN, NORTHERN DIVISION

| | | |
|---|---|---|
| JOHNATHAN AARON BROWN, on behalf of himself and a class of others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No: 1:10-cv-12162 |
| v. | ) ) | Judge Ludington |
| | ) | Magistrate Judge Binder |
| CITY OF DETROIT, | ) ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

**PLAINTIFF'S MEMORANDUM OF LAW SEEKING CLASS CERTIFICATION AND ENTRY OF DEFAULT JUDGMENT IN FAVOR OF THE CLASS AS TO LIABILITY**

Plaintiff, Johnathan Aaron Brown, through his counsel, Loevy & Loevy and Frank, Haron, and Weiner, respectfully submits the following Memorandum of Law in support of his request for class certification and an entry of default judgment in favor of the class as to liability. Plaintiff's request should be granted for the following reasons:

**Overview**

As with any other type of case, class litigation under Rule 23 proceeds through the usual stages of litigation. Pleadings are filed and answered, then there is discovery, summary judgment, sometimes settlement, and, if not, a trial. There is nothing about the backdrop of Rule 23 that relieves a party of the standard requirements at each stage, nor that changes the available remedies in the event of non-compliance.

As a result, courts can and do hold class action defendants in default and award default judgments to the class. On such occasions, the court's role is to ensure that the default judgment is consistent with the interests of the absent class members. Under the law, courts faced with these circumstances examine the Rule 23 certification factors (albeit is a non-adversarial fashion

more akin to the court's scrutiny of class certification when the parties reach a settlement on behalf of the class) to ensure that the default judgment is handled in a manner consistent with the best interests of the class. The court also directs that the class members receive notice and an opportunity to opt out of any stage that could adversely affect their rights.

As applied here, there is not even an arguable impediment to entry of a judgment that Detroit is liable to the class for violating their constitutional rights. The class satisfies the requirements of Rule 23(a) and 23(b)(3), and there can be little doubt that a determination of liability is in the best interests of each class member. An award of default judgment for liability cannot adversely affect the absent class members because it relieves them of proving this prerequisite to damages without any downside risk of loss.

Complexities arise only at the point of assessing damages. Unlike with a finding of liability, where the finding can only benefit a class member, an adjudication of damages may cause a class member to recover less than he or she would have in an individual case. For that reason, class members must be given notice of the action and an opportunity to opt out before the case proceeds to the damages stage. Those who opt out, under those circumstances, may bring an individual damages case, with liability already having been determined. Those who stay in will have their damages determined through the damages trial for the class or, if the case settles before a damages trial (as most do), these class members will have the right to participate in the claims process.

Liability is often determined in a class action context separately from damages -- be it at summary judgment or through a trial where liability is bifurcated from damages. Consequently, courts have developed procedures for addressing the damages phase. Case law and the *Federal Judicial Center Manual on Complex Litigation* recognize that a determination of classwide

liability creates a strong opportunity and incentive for settlement in class cases, and there are numerous procedures used by courts to facilitate settlement (including, for example, bellwether damages trials). On the rare occasion when settlement fails, courts can use special masters to make individual damages determinations (as expressed in Natkin & Co. v. Aro Equipment Corp., 109 F. Supp. 273, 277 (D.C. Ohio 1951)); or, limit the available damages to the jury's assessment of common presumed damages (as in Memphis Comm. Sch. Dist. v. Stachura, 477 U.S. 299 (1986)), subject to the class members' opt out rights; or, if the evidence supports it, courts can use statistical sampling and experts to allow presentation to the jury of a more expansive measure of damages (as in Hilao v. Estate of Marcos, 103 F. 3d 767 (9th Cir. 1996)). Failing these methods, courts can decertify the case for the damages phase and simply enter final judgment for liability only. In that case the absent class members can bring their damages claims in separate actions to enforce the liability judgment.

Accordingly, Plaintiff respectfully submit that the Court should proceed as follows: (1) determine whether the class is properly certified under Rule 23 (which it is) using the appropriate standard upon a default; (2) enter a classwide judgment for liability against Defendant City of Detroit; and then (3) use the settlement procedures set forth in the *Manual for Complex Litigation*. If the case resolves, then notice of the proposed settlement would go out to the class members and they would be given chance to opt out. If there is no settlement (which, under the circumstances seems unlikely), then the Court should order notice to be sent, allowing class members an opportunity to opt out before the damages phase, and then decide among the available options for determining class action damages.

I.      **Classes 1-3 Meet the Requirements for Certification Upon a Default**

As with other areas of litigation, when a defendant defaults, it loses certain rights. In the class context, a defaulting defendant waives, for example, its right to challenge the burden of classwide litigation, see Amchem Products, Inc. v. Windsor, 521 U.S. 591, 630 (1997) (in class action settlement, court is relieved of need to determine whether class would be manageable from perspective of conducting a trial, but must still protect class members by satisfying itself that class meets the requirements for certification), and the court focuses solely on the due process rights of the absent class members. To that end, the court must still conduct an independent determination as to whether class treatment is proper under Rule 23. See Smith v. Computertraining.com, Inc., No. 10-CV-11490, 2011 WL 308992, at *2 (E.D. Mich. Jan. 27, 2011); see also Davis v. Hutchins, 321 F.3d 641, 648 (7th Cir. 2003); Partington v. American Int'l Speciality Lines Ins. Co., 443 F.3d 334, 340 (4th Cir. 2006).[1]

The only issue before a court on a motion for class certification is "whether plaintiff is asserting a claim, which, assuming its merit, will satisfy the requirements of Rule 23..." Little

---

[1] In granting a default judgment, a court need only establish that the allegations in the complaint, taken as true, state a claim for relief. See General Conference Corp. of Seventh-Day Adventists v. McGill, 617 F.3d 402, 407 (6th Cir. 2010). There is no doubt that Plaintiff's Complaint here states cognizable claims. Indeed, each of the causes of action presented here are well-recognized by case law in this and other circuits. See County of Riverside v. McLaughlin, 500 U.S. 44 (1991) (arrestee has a constitutional right to have judicial determination within 48 hours of arrest that probable cause exists for his continued detention); Drogosch v. Metcalf, 557 F.3d 372, 378 (6th Cir. 2009) ("13 day confinement without a hearing after a warrantless arrest plainly constituted a violation of his Fourth Amendment rights"); Hallstrom v. City of Garden City, 991 F.2d 1473 (9th Cir. 1993) (arraignment delays due to difficulties to complete booking procedures are unjustified); Allen v. Aramark Corp., 2007 WL 3120088, *5-6 (W.D. Ky. 2007) (depriving an inmate of food states a claim for a constitutional violation); Ndaula v. Holliday, No. 04 CV 0722, 2007 WL 1098954, at *8 (W.D. La. Mar. 20, 2007) ("Sleep also counts as one of life's basic needs.... Forcing a detainee to sleep without a mattress [thus] states a due process violation) (internal citations omitted). Monell v. Dept. of Soc. Serv., 436 U.S. 658 (1978) (municipal liability for maintain unconstitutional policies). Accordingly, this Court need only address whether plaintiff has satisfied the class action requirements set forth under Rule 23.

Caesar Enter., Inc. v. Smith, 172 F.R.D. 236, 241 (E.D. Mich. 1997). The substantive allegations made in the complaint should be taken as true and the court should assume that cognizable claims are stated. See Computertraining.com, Inc., 2011 WL 308992, at *2; In re: Cardizem CD Antitrust Litigation, 200 F.R.D. 326, 334 (E.D. Mich. 2001) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974)). The court retains broad discretion in determining whether an action should be certified as a class action. Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1988). However, if the court is in doubt about whether to certify the class, it should err in favor of allowing a class action. Computertraining.com, Inc., 2011 WL 308992, at *2; Cardizem CD Antitrust Litigation, 200 F.R.D. at 334; Little Caesar, 172 F.R.D. at 241.

This is especially true where the defendant has defaulted. As with all cases where a defendant defaulted, the Court should consider the Rule 23 factors in light of the facts in the complaint, taking the well-pleaded facts as true. See Computertraining.com, Inc., 2011 WL 308992, at *2 (granting class certification following entry of a default against the defendant); Davis v. Precise Communication Services, Inc., No. 07 C 3128, 2009 WL 812276, at *1 (N.D. Ga. Mar. 27, 2009) (defaulting defendant in class action "forego[es] its right to challenge any of the well-pleaded factual allegations in Plaintiff's complaint.") (citing Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir.1976)).

### A. Class I-III Satisfy Rule 23(a)

The four prerequisites for certifying a class action under Rule 23(a) are generally referred to as numerosity, commonality, typicality, and adequacy of representation. See Beattie v. CenturyTel, Inc., 234 F.R.D. 160, 167 (E.D. Mich. 2006). Each is satisfied here.

#### 1. Numerosity

Numerosity exists where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement is met when plaintiff demonstrates

that the number of persons fitting the class definition is substantial, and "it is generally accepted that a class of 40 or more members is sufficient to establish numerosity." Appoloni v. United States, 218 F.R.D. 556, 561 (W.D. Mich. 2003). Moreover, the plaintiff can rely on common sense assumptions and need not demonstrate the number of class members with precision. Olden v. LaFarge Corp., 203 F.R.D. 254, 269 (E.D. Mich. 2004), aff'd, 383 F.3d 495 (6th Cir. 2004) (when "the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied") (internal citation omitted).

Myriad, publically-available facts demonstrate a common sense basis for finding numerosity. First, according to the Michigan State Police Uniform Crime Report, the Detroit Police Department ("DPD") arrested an average of 25,456 individuals each year between 2007 and 2009. Michigan State Police Uniform Crime Report, available at http://www.michigan.gov/msp/ 0,1607,7-123-1645_3501_4621---,00.html. The reports of the Independent Monitor likewise support a finding of numerosity. In 2000, over 110,000 detainees were held in DPD facilities. See Exhibit A, Detroit Police Dept. Holding Cell Findings Letter from Department of Justice (April 2, 2002) at 1. A substantial percentage of those detainees were held more than 48 hours without arraignment or release. An Department of Justice ("DOJ") investigation that resulted in two 2003 consent decrees (attached hereto as Exhibit B) concerning prolonged detentions and conditions of confinement, found that in a single month 53 persons were arrested on the serious crime of homicide and not charged; of these, 23% (or 13 persons) were held for over 48 hours. See Exhibit C, Detroit Police Dept. Detention Findings Letter from Department of Justice (June 5, 2002), at 4. Just three months of detentions for this one category of arrests alone would meet the numerosity threshold for Class I; the class definition here covers over three years and many more categories of arrests.

Moreover, a review of the independent monitor reports during the class period demonstrates that the practice of unjustified prolonged detentions continued throughout this timeframe. See Group Exhibit D, Collection of the Independent Monitoring Reports – Selected Pages, Quarter Review ending August 31, 2007, at 15 (In a random sample of 94 arrests, there were two arrests where detainees were held for nearly 50 hours before being released without charge, and seven arrests where detainees were presented for arraignment more than 48 hours after arrest); Quarter Review ending May 31, 2008, at 27 (29 of 44 detainees were presented for arraignment more than 48 hours after arrest and with no exigent circumstances); Quarter Review ending February 28, 2009, at 18 (In 25.6% of sampled arrests, detainees were presented for arraignment more than 48 hours after arrest and with no exigent circumstances).

The figures cited with regard to Class II also support a finding of numerosity for Class I. Plaintiff alleges a system-wide failure to provide bedding, and, by definition, all members of Class II also fall into Class I.

With regard to Class III, the independent monitor also audits the DPD food service. The monitoring reports during the class period consistently show that the DPD is not taking the necessary steps to ensure individuals in its custody are provided adequate food. See Group Exhibit D, Quarter Review ending August 31, 2007, at 69 (monitor could not verify that any of the sampled detainees received a proper meal); Quarter Review ending February 28, 2009, at 78 (13 of 15 detainees were not provided adequate and timely meals). Though the food service requirement established by the consent decree (provide meal to all arrestees held for over six hours) is different than that defined by Plaintiff's class (at least two meals within 24 hours), common sense dictates that hundreds or thousands of individuals (certainly more than 40) meet the requirements of Class III.

**2. Commonality and Typicality**

Each of the three class claims present common questions of law and fact, and the claims of Named Plaintiff Brown are typical of these claims. Accordingly, Classes I-III also satisfy Rule 23(a)(2-3).

(a) Commonality

Rule 23(a)(2) requires that a class claim present at least one question of law or fact that is common to each class member. In re American Medical Systems, Inc., 75 F.3d, 1069, 1080 (6th Cir. 1996). Allegations of a policy or a standardized practice affecting each member of a putative class are sufficient to demonstrate commonality. Gilkey v. Central Clearings Co., 202 F.R.D. 515, 521 (E.D. Mich. 2001) (when "defendant's standardize conduct is at issue, the commonality factor is normally met").

Each member of Class I alleges that his/her constitutional rights were violated by a common policy of the DPD not to maintain bedding in any police facility. Complaint ¶¶ 57-58. To hold Detroit liable, each member of Class I must prove common questions of law and fact including that this policy exists, and that it is a constitutional violation to deprive a detainee of any bedding when the government detains that person long enough that he or she will need sleep. Examples of cases treating this legal question in the context of Monell litigation include Anela v. City of Wildwood, 790 F.2d 1063 (3rd Cir. 1986) (finding a Fourteenth Amendment violation when there is no reason for arrestees held overnight to be deprived of a mattress other than the city's practice of not maintaining bedding at its police station) and Thompson v. City of Los Angeles, 885 F.2d 1439 (9th Cir. 1989) (same municipal policy of maintaining insufficient number of mattresses for city's usual population of detainees).

The same is true for Classes II and III. Each allege that the City has a widespread practice of violating the legal requirements regarding length of detention and feeding, and that its policy makers have been deliberately indifferent to the need for better training about these constitutional rights and effective discipline when they are violated. Complaint ¶¶ 59-64. Such allegations satisfy commonality. See Knop v. Johnson, 667 F.Supp. 467 (W.D. Mich. 1987) (certifying class challenging various conditions at MDOC facilities); Strunk v. LaGrange County Sheriff, No. 10 CV 23, 2011 WL 839662 (N.D. Ind. March 7, 2011) (allegations of a "policy of not getting pretrial detainees arraigned or released within forty-eight (48) hours and failing to supervise and train employees to do so" satisfies commonality); Young v. County of Cook, No. 06 C 552, 2007 WL 1238920, at *5 (N.D. Ill. Apr. 25, 2007) (commonality is generally satisfied by showing "that the defendants acted pursuant to policies and standard practices that were common to all class members"); Flood v. Dominguez, No. 08 CV 153, 270 F.R.D. 413, 418 (N.D. Ind. 2010) ("[T]he Plaintiffs' core complaint-that the Jail's policy of keeping detainees in holding cells for over 24-hours without a mattress or bed is unconstitutional-is common to the entire class"); Dunn v. City of Chicago, No. 04 CV 6804, 231 F.R.D. 367, 375 (N.D. Ill. Oct. 5, 2005) (certifying class claim challenging the constitutionality of a widespread practice within the CPD of using unlawfully long detention).

    (b) Typicality

Typicality is satisfied if a plaintiff's claim arises from the same practices or course of conduct that gives rise to the claims of the other class members, and the claims are based on the same legal theories. See American Medical Systems, Inc., 75 F.3d at 1082 (internal citations omitted). Commonality and typicality are closely related, and a finding of one often results in a finding of the other. Ross v. Abercrombie & Fitch Co., 257 F.R.D. 435, 444 (S.D. Ohio 2009).

9

Plaintiff and the absent members of Classes I-III seek recovery from Detroit under the same legal theories, and success will require them to prove the exact same policies and conduct by Detroit. In particular, Plaintiff and each class member must establish that Detroit has municipal liability for the constitutional violations they suffered because Detroit maintained unconstitutional policies under Monell v. Dept. of Soc. Serv., 436 U.S. 658 (1978); failed to enact necessary policies and provide necessary training under Canton v. Harris, 489 U.S. 378 (1989); and were deliberately indifferent to the widespread pattern of the very type of constitutional violations they suffered under St. Louis v. Paraprotnik, 485 U.S. 112 (1988). See Complaint ¶¶ 56-68. These same facts will prove the claims of Plaintiff and each class member. See Eddleman v. Jefferson County, No. 95-5394, 96 F.3d 1448 (Table), 1996 WL 495013, at *4 (6th Cir. 1996) ("The legal theory under which Plaintiff would proceed is the same [as the class], regardless of whether a full or partial search is alleged"); D.D. v. Washington County, Ohio, No. 10 CV 1097, 2011 WL 830761, at *3 (S.D. Ohio Mar. 3, 2011) (plaintiff seeking "systematic changes to the alleged unconstitutional and illegal policies, conditions and practices at DYS" satisfied the typicality requirement for class certification); Holman v. Macon County, Tenn., No. 10-00036, 2011 WL 252969, at *5 (M.D. Tenn. Jan. 26, 2011) (finding that the process by which county defendant set or denied bail is typical as to all class members).

### 3. Adequacy of Representation

Under rule 23(a)(4), the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23. The three elements of adequacy are: (1) the representative cannot have antagonistic or conflicting claims with other members of the class; (2) the representative must have a sufficient interest in the outcome to ensure vigorous advocacy; and (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally

able to conduct the proposed litigation vigorously. Rosiles-Perez v. Superior Forestry Service, Inc., 250 F.R.D. 332, 342-43 (M.D. Tenn. 2008).

Plaintiff here is not antagonistic to any absent class member and has an ample interest in vigorously pursuing the class claims. There is absolutely no evidence to the contrary.

Plaintiff has also retained adequate counsel for the class. The undersigned attorneys are very experienced civil rights litigators and have been found to be sufficient for these purposes in other class actions quite similar to the case at bar. See e.g., Young, 2007 WL 1238920, at *6 (N.D. Ill. 2007) ("The Court has no doubt that plaintiffs' counsel will be able to represent fairly the interest of the proposed classes).

Thus, Plaintiff satisfies all of the requirements of Rule 23(a).

**B. Classes I-III Meet the Requirements For Certification Under Rule 23(b)(3)**

Certification of a Rule 23(b)(3) class requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied as to each of the three classes.

As to the first issue, "the predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Beattie v. CenturyTel, Inc., 511 F.3d 554, 564 (6th Cir. 2007) (quoting Amchem, 521 U.S. at 632). Thus, while common questions must predominate over individual ones, they need not be the exclusive questions in the case. Generally, where a class challenges the legality of a defendant's procedures applied to the class, the common questions predominate over individualized ones. Id.; Sutton v. Hopkins County, Ky., No. 03 CV 003, 2007 WL 119892, at *6 (W.D. Ky. Jan. 11, 2007) ("[C]ase law

11

suggests that, when a uniformly applied policy is challenged, the validity of the policy predominates over individual issues. Consistent with this principle, the Sixth Circuit found class certification appropriate in a case in which the plaintiff class challenged a blanket or uniform strip search policy, despite the presence of some factual variation in the claims.") (internal citations omitted); see also Salvagne v. Fairfield Ford, Inc., 264 F.R.D. 321, 329 (S.D. Ohio 2009) ("[defendant's] liability will be determined by analyzing its policies and procedures, which affected each putative class member. As to liability, therefore, common issues predominate.").

Further, when deciding predominance, the focus is on the adjudication of liability, because variations in individual damages can be addressed after a classwide determination of liability. Beattie, 511 F.3d at 564 ("[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.") (quoting In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 139 (2d Cir. 2001)). See also Olden v. LaFarge Corp., 203 F.R.D. 254, 271 (E.D. Mich. 2001) (finding prerequisites for class certification were met because "[o]nce liability is found, the issue of damages can be decided by a special master or by another method").

As explained above, each of the three classes at issue here challenges the Defendant's uniform procedures in the processing of arrestees: failure to maintain bedding for the arrestees (Class I); failure to release or arraign sooner those held longer than 48 hours from the time of arrest (Class II);[2] and failure to provide at least two meals to those held in excess of 24 hours (Class III).

---

[2] In this regard, the fact that Detroit may have a defense for some class members where it could establish "emergency or extraordinary circumstances" justifying why that particular class member was held over 48 hours, McLaughlin, 500 U.S. at 56, does not affect the predominance

Finally, as to superiority, courts routinely hold that class treatment for cases like the one at bar are superior to a multiplicity of individual lawsuits. See e.g., In re Nassau County Strip Search Cases, 461 F.3d 219, 228 (2nd Cir. 2006) (suit challenging the constitutionality of standardized policies "presents precisely the type of situation for which the class action device is suited since many nearly identical litigations can be adjudicated in unison") (internal quotations and citations omitted); Cancel v. City of Chicago, 254 F.R.D. 501, 512 (N.D. Ill. 2008) (individual lawsuits challenging the same municipal policies "would require multiple courts to evaluate the same evidence and analyze the same policies and practices in what would amount to a wastefully inefficient enterprise").

This is particularly true because the risks and difficulties of Monell litigation are great when compared to the relatively small damages, thereby creating a substantial disincentive and thus impediment to even pursuing an individual liability claim. Cardizem CD Antitrust Litigation, 200 F.R.D. 297, 325-36 (E.D. Mich. 2001) (finding that in complex litigation cases, "it is not obvious that all members of the class could economically bring suits on their own"); Little Caesar Enter., Inc., 172 F.R.D. at 267 (same); Smith v. Ajax Magnethermic Corp., No. 02 CV 0980, 2007 WL 3355080, at *5 (N.D. Ohio Nov. 7, 2007) ("[T]he relatively small amount of individual damages and the similarity of claims give class members little interest in individually controlling separate actions"); Berger v. Cleveland Clinic Foundation, No. 05 CV 1508, 2007

---

inquiry. Beattie, 511 F.3d at 564 ("Further, the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." (internal quotations omitted)). This is particularly true because, by definition, the occasion that supports such a defense must be "extraordinary" and, thus, rare (or ministerial as in the case where the documents show a class member was in the hospital and could not be taken to court). See Dunn, 231 F.R.D at 378 (classwide issues predominated even though defendant intended to raise "extraordinary circumstances" defense as to some class members). Moreover, where, as here, liability is resolved by default, courts are not concerned with issues that would arise in managing a trial on liability that will never happen. See Amchem, 521 U.S. at 630.

WL 2902907, at *25 (N.D. Ohio Sept. 29, 2007) ("[D]ue to the small individual damages potentially due [to] each class member, a class action makes more sense than requiring each therapist to bring a separate claim"). Even without the forgoing case law support, the fact that this certification ruling arises in the context of a default order, substantially moots the superiority inquiry. See Amchem, 521 U.S. at 520 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."); Nishimatsu Const. Co., 515 F.2d at 1206 ("Attempts by a defendant to escape the effects of his default should be strictly circumscribed; he should not be given the opportunity to litigate what has already been considered admitted in law.") (citing Trans World Airlines, Inc. v. Hughes, 38 F.R.D. 499, 501 (S.D.N.Y)).

\* \* \*

For all of these reasons, the case is properly certified for purposes of entering a judgment for liability to the class. As is explained in greater detail in the following section of this brief, whether the Court maintains the certification for purposes of a damages phase or, ultimately decertifies at the damages phase, leaving the class with a determination of liability only, will depend on several factors which the Court should address after attempting settlement and after reviewing expert opinion on the commonality of the class members' damages. See Beattie, 511 F.3d at 564. As the court in Carnegie v. Household Intern., Inc., 376 F.3d 656, 661 (7th Cir. 2004) explained: Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include "(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings;

14

(3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." (citing Visa Check/MasterMoney Antitrust Litigation, 280 F.3d at 141).[3]

## II.   Class Notice Of Certification and Default Judgment

The Court has asked Plaintiff to address the issue of class notice. Plaintiff recommends that the Court order notice at two stages, roughly approximating how notice would proceed in the absence of default. The first notice would go out soon after the entry of default judgment to the class. This notice will inform class members about the nature and status of the lawsuit, that the Court is currently working with the parties on settlement and considering how damages will be resolved if settlement is not reached, and that the members will receive additional notice and an opportunity to opt out before approving the settlement or proceeding to the damages stage. The notice will also instruct the class members that they should inform class counsel if their contact information changes. See Exhibit E, Proposed Notice.[4]  The Proposed Notice should be disseminated through (1) individualized Mailed Notice to potential Class Members, (2) Published Notice, and (3) a website maintained by Class counsel.

---

[3] After Plaintiff filed his Response, [Dckt. 30], to Defendant's Motion to Set Aside Default, [Dckt 29], Defendant produced a portion of the long overdue discovery. Defendant's ability to produce these documents within days after Plaintiff's Response demonstrates the requests were not overwhelming as claimed in its Motion and accordingly, further supports the Court denying Defendant's Motion to Set Aside Default. In any event, the Court may still grant class certification regardless of its decision on Defendant's pending motion.

[4] Fourteen percent (14%) of people move each year in the United States. A third of the population does not provide a change of address to the United States Postal Service. While there are methods to update addresses, only about 50% can be traced to a new address. To address the attrition issue, the Proposed Notice will also tell class members to notify class counsel if their address changes. Class counsel will establish a P.O. Box and toll-free number for this purpose.

The second round of notice will be based on the results of settlement or, if necessary, the Court's determination of how (or if) classwide damages should be determined in this case. Plaintiff explains the second round notice later in this brief.

## III.     Settlement Steps

Almost all class actions settle, if not after class certification, then following a judicial determination of liability (usually at summary judgment but, sometimes, after a bifurcated trial on the issue of liability). This case has reached the stage at which liability to the class is determined.[5]  Accordingly, this case too is at the stage when settlement procedures are advisable and most likely to bear fruit. See *Federal Judicial Center Manual for Complex Litigation*, *Fourth*, § 13.13, at 171-72 ("The resolution of liability . . . can provide the parties with the information or incentive needed for a comprehensive settlement."). That is especially so here: the City of Detroit acknowledges that it settles 90% of cases against it and that it views settlement a superior method of resolving damages issues. See Def's Motion to Set Aside Default [Dckt 29], at 2.

Plaintiff does not dispute that this case, like most large class actions, presents complexities in determining classwide damages. The Federal Judicial Center's guidance, as well as applicable case law, present innovative ideas on how to address such challenges. As an initial matter, a mediation before the Court or the magistrate judge could facilitate the development of a settlement framework and clarify the parties' positions. If the parties have divergent views about

---

[5]  As a practical matter, Defendant did not have a defense on the merits anyway. Its sole contention was that some detainees held over 48 hours may not qualify as class members based on exigent circumstances related to the unavailability of a magistrate, medical emergencies, and acts of nature; however, that is not a defense to the bulk of the 48 hour class's claims and it does not even apply to the claims of the other two classes. See Def's Motion to Set Aside Default [Dckt. 29], at 2.

16

appropriate damages to each class, a non-binding arbitration or neutral evaluation, in which the parties present arguments to a judge, private attorney, or other neutral party who then provides an assessment of the parties' prospects, could further facilitate a settlement. See *Federal Judicial Center Civil Litigation Management Manual*, Ch. 5, at 78-81.

Finally, because class members' injuries are not easily quantified, additional settlement procedures may be appropriate. For example, mini-trials as to damages for a handful of members of each class would provide a relatively efficient method of establishing a quantifiable measure of damages that can be used to extrapolate potential classwide liability and to frame the parties' settlement discussions. Id. at 81-82. In fact, in a case our firm recently handled in the Northern District of Illinois, which presented classwide claims for approximately 250,000 detainees in Cook Country, the court held individual damages trials (after liability was determined) for eight class members over nine days. Based on the data gleaned from the results of those trials, and with the court's subsequent assistance in mediation, the parties reached a settlement. See Exhibit F, Docket Report for Young v. County of Cook, No. 06 Civ. 552, Northern District of Illinois, Dckts. 577-585 (held jury trial regarding damages); 586 (setting date for settlement conference); 649 (granting final approval of class action settlement).

## IV. Options for Determining Damages

As stated, "Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues," including bifurcating liability and damage trials with the same or different juries; appointing a magistrate judge or special master to preside over individual damages proceedings; and decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages. See Carnegie, 376 F.3d at 661 (citations and quotations omitted). For

example, courts have used sample damages trials together with statistical sampling to extrapolate total classwide damages. In Marcos, 103 F. 3d 767, a human rights class action, the Ninth Circuit affirmed such a procedure, in which a special master presented a random sampling of 137 claims to a jury for assessment of damages. The jury's findings were then extrapolated to the entire class to identify the total damages. Id. at 283-84. To determine if this, or a similar, procedure is feasible here, Plaintiff will need to obtain a sample of the class and consult experts.[6]

Other courts have awarded presumed damages – *i.e.*, damages for injuries which all class members would have suffered in common, leaving the non-common elements of injury for individual hearings or decertifying the class at the point of the presumed damages award. See Memphis v. Stachura, 477 U.S. 299, 310-11 (1986) ("Presumed damages are a substitute for ordinary compensatory damages. . . .[P]resumed damages may roughly approximate the harm that the plaintiff suffered and thereby compensate for harms that may be impossible to measure."); Hessel v. O'Hearn, 977 F.2d 299, 302 (7th Cir. 1995) ("[G]eneral or, as they are sometimes called, 'presumed' damages – compensatory damages awarded without proof of injury – . . . may be recoverable when substantive constitutional rights, such as the right to freedom of speech, or the right to be free from unreasonable searches and seizures, are infringed.") (emphasis added); In re Nassau County Strip Search Cases, 2008 WL 850268, at *4

---

[6] In support of this sampling process, plaintiff anticipates moving the Court to hold a damages trial for several randomly-selected members of each class. Requiring the parties to prepare for and try several damages actions will help inform the statistical process for the experts, and will also give the parties a baseline understanding of the range of values for the constitutional violations. That sort of information may facilitate the parties liquidating through settlement the individualized damages amounts, and thereby avoiding more resource-intensive portions of the damages phase. As discussed in the Settlement section, supra, extrapolating from statistical samples to obtain a reasonable measure of classwide damages is a common method of addressing damages issues in class action litigation.

(E.D.N.Y. March 27, 2008) (certifying a presumed damages class under Stachura for class-wide loss of dignity damages).

The proposed procedures set forth here and in the Settlement section are used and accepted methods of assessing damages in the class context after liability has been established, including where a judgment as to liability has been entered based on a defendant's default. Plaintiff urges the Court to adopt one or more of them here.

## V.      Class Notice Regarding Damages

If the case settles after a judgment as to classwide liability is entered, the most likely outcome under the circumstances, a second notice should be sent to the class, notifying class members of the proposed settlement and granting them an opportunity to opt out of the settlement. Class members who choose to opt out at that time could then pursue individual damages claims, with the benefit of the liability judgment. The same procedure would apply if settlement efforts were unsuccessful but the Court allowed the class to use mini-trials, statistical sampling or other methods to establish classwide damages.

If settlement is unsuccessful and the Court concludes that a finding of classwide damages is inappropriate, the Court can always choose to decertify the class as to damages and enter final judgment as to liability only. In that case, a notice should be issued to class members notifying them of that fact and their right to bring damages claims individually.

Based on which of these outcomes ultimately prevails, Plaintiff will present a proposed second notice to the Court for approval.

**Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) grant class certification to Classes I, II and III; (2) enter a classwide judgment as to liability against Defendant City of Detroit; and then (3) initiate settlement procedures to attempt to bring this action to a negotiated outcome.

                                        Respectfully submitted,

                                        Attorneys for Plaintiff

Arthur Loevy
Michael Kanovitz
Jon Loevy
Cindy Tsai
LOEVY & LOEVY
ATTORNEYS FOR PLAINTIFF
312 North May St., Suite 100
Chicago, IL 60607
Telephone: (312) 243-5900
Facsimile: (312) 243-5902

David L. Haron (P14655)
Mercedes Varasteh Dordeski
Tamara E. Fraser
FRANK, HARON, and WEINER
ATTORNEYS FOR PLAINTIFF
5435 Corporate Drive, Suite 225
Troy, MI 48098
Telephone: (248) 952-0400
Facsimile: (248) 952-0890

**Certificate of Service**

I, Cindy Tsai, hereby certify that on Wednesday, May 11, 2011, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.