IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN, NORTHERN DIVISION

| | | |
|---|---|---|
| JOHNATHAN AARON BROWN, on behalf of himself and a class of others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | NO: 1:10-cv-12162 |
| v. | ) ) | Judge Ludington Magistrate Judge Binder |
| CITY OF DETROIT, | ) ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO CITY OF DETROIT'S MOTION FOR RECONSIDERATION OF CLASS CERTIFICATION AND SUPPLEMENTAL BRIEF ON THE MANNER OF <u>ESTABLISHING DAMAGES</u>**

Plaintiff JOHNATHAN AARON BROWN, on behalf of himself and the certified class, hereby respectfully submits the following response in opposition to the City of Detroit's Motion to Decertify the Class and supplemental brief on the manner of establishing damages.

## STATEMENT OF ISSUES PRESENTED

I. Whether the Supreme Court in *Comcast Corp. v. Behrend* overruled copious precedent from every circuit that allowed courts to certify liability issues even where damages are individualized, all without stating in the opinion that those precedents were being overruled.

II. Whether the Consent Decree takes away private citizens' rights to seek relief from the City for its unconstitutional police practices when the claims for the lawsuit derive directly from well-established Fourth and Fourteenth Amendment law.

III. Whether the City's failure to present facts about foam padded benches and its suicide prevention policies is a palpable defect that would cause for a different result even when its failure to comply with discovery deadlines led the City into default, binding the City to the factual allegations in the complaint, and when entering the default judgment, the Court need only find that the complaint alleges viable legal claims.

Most Appropriate Authority Showing That Defendant's Motion Should Be Denied

*Cases*
*In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) ...................... 6

*Miri v. Dillon*, No. 11–15248, 2013 WL 2034310 (E.D. Mich. May 14, 2013) ........... 10

*Wallace v. Powell*, Case No. 3:09–cv–286, 2013 WL 2042369
    (M.D. Pa. May 14, 2013) ........................................................................... 10, 11

*Bond v. U.S. Mfg. Corp.*, 09-11699, 2010 WL 4825286
    (E.D. Mich. Nov. 22, 2010) ............................................................................... 13

*Toner v. Vill. of Elkton*, 11-10835, 2012 WL 5947605
    (E.D. Mich. Nov. 28, 2012) (Ludington, J.) ................................................. 13, 14

*Sommer v. Davis,* 317 F.3d 686, 691 (6th Cir. 2003) .................................................. 17

*Rules*
E.D. Mich. Local Rule 7.1 ...................................................................................... 13

## INTRODUCTION

More than two years ago, the Court ruled in Plaintiff's favor on liability, finding that an entry of default against the City of Detroit was "necessary to advance the case" given the City's repeated failure to abide by its discovery obligations and the Court's orders. Dckt. 33 at 2. After the City unsuccessfully sought to set aside the default, the Court certified two classes and "concluded that default runs to the two classes." Dckt. 66 at 2.

The City now seeks to decertify the classes, asserting that *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), a recent Supreme Court decision in an antitrust case where plaintiff never sought to certify liability issues separately from damages issues, overruled decades of cases in which courts certified liability-only classes in civil rights cases. *See* Dckt. 76 at 20. The *Comcast* decision, however, is irrelevant to cases such as this one, in which plaintiffs seek class certification as to liability only.

In addition to asking the Court to decertify the classes, the City once again seeks to set aside the default, despite the fact that nothing has changed since the Court rejected the City's last motion to set aside the default. The City's request for "the Court to allow justice tempered with mercy to prevail," dckt. 75 at 10, is not a result that would be accomplished by granting the City's motion. Instead, it would have the opposite effect, as it would deny justice to the thousands of Class members whose Constitutional rights the City violated and who have now waited more than three years for a remedy.

As set forth in more detail below, the Court has already ruled on all of the issues in the City's motion, and its request for reconsideration should be rejected.[1] Plaintiffs and the Classes therefore respectfully request that the Court: (1) deny the City's motion; (2) enter final judgment for the Classes on liability, pursuant to Fed. R. Civ. P. 23(c)(4); (3) issue notice to the class members, at the Defendants' expense; and (4) decertify the Classes for damages purposes, so that individual class members may pursue damages claims, but stay that ruling until the Class receives notice.

## ARGUMENT

I.  *Comcast* Did Not Change the Law that Applied When This Court Bifurcated The Issues On Damages and Liability and Then Certified The Classes for Liability

    A.  The Court's Certification of Liability Classes Was Appropriate

On September 27, 2013, the Court certified "two classes as to liability," dckt. 60 at 3, in line with "Sixth Circuit precedent [that] authorizes the bifurcation of

---

[1] With respect to its request that the Court decertify the classes, the City does not even acknowledge that its request is made in the context of a motion to reconsider. Rather, the City merely asserts that Rule 23 provides district courts the discretion to decertify previously certified classes. It is true that the Court has such discretion, but that does not mean that the City starts from a blank slate. Rather, motions to reconsider class certification decisions are subject to the same standard that governs all motions to reconsider; like all such motions, they should be granted in limited circumstances only. *Manno v. Healthcare Revenue Recovery Grp., LLC*, 11-61357, 2013 WL 2384245, at *1 (S.D. Fla. May 30, 2013) ("The Defendants' arguments were either previously considered and rejected, or were not properly raised the first time around. Both in their papers and at oral argument, the Defendants have re-emphasized their core arguments against class certification—arguments that, rightly or wrongly, the Court has already rejected—while also continually raising new issues and arguments why this case cannot be certified as a class action. That is not what reconsideration is for.")

liability from damages in class actions brought pursuant to Rule 23(b)(3)." Dckt. 60 at 1, citing *Olden v. LaFarge Corp.*, 203 F.R.D. 254 (E.D. Mich. 2001) (Lawson, J.), *aff'd* 383 F.3d 495 (6th Cir. 2004) and Fed. R. Civ. P. 23(c)(4). The Court's decision was amply supported by a substantial body of case law certifying liability classes, including in constitutional cases, as well as by the plain language of Rule 23(c)(4), which states that "an action may be brought or maintained as a class action with respect to particular issues."

For example, the United States Court of Appeals for the Second Circuit in *In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006), reversed the denial of class certification in a case brought pursuant to §1983 to remedy the defendant's unconstitutional strip searches of individuals detained at the Nassau County Correctional Center. After examining the plain language and the purpose of Rule 23(c)(4), the Second Circuit held "that a court may employ subsection (c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement." *Id.* at 227 (emphasis added). Put differently, if common issues predominate the liability determination, it is appropriate to certify a class to address those issues, regardless of whether class certification would be appropriate for damages. *See id.* at 230-31 (ordering district court to certify class for liability and then to consider whether to certify class for damages). As the Second Circuit explained, this is exactly the type of case in which Rule 23(c)(4) should be used:

> Absent class certification and its attendant class-wide notice procedures, most of these individuals—who potentially number

> in the thousands—likely never will know that defendants violated their clearly established constitutional rights, and thus never will be able to vindicate those rights. As a practical matter, then, without use of the class action mechanism, individuals harmed by defendants' policy and practice may lack an effective remedy altogether.

*Id.* at 229; *see also Arreola v. Godinez*, 546 F.3d 788, 790, 800 (7th Cir. 2008) (in putative class action on behalf of inmates alleging they were "injured by the Jail's policy of denying crutches in certain areas of the Jail to the inmates who live there," noting that individualized damages do not necessitate denying class certification, as Rule 23 "specifically recognizes the possibility of certifying not just class claims, but also class issues") (internal quotations omitted); *Sutton v. Hopkins County, Ky.*, No. 03 CV 003, 2007 WL 119892, at *8 (W.D. Ky. Jan. 11, 2007) (because of potential variations in damages in strip search class action, "the Court will bifurcate the lawsuit permitting the Defendants' liability to be determined initially. In the event a jury determines that the Hopkins County Jail maintained an unconstitutional blanket strip search policy, the Court will then determine the best approach for the second phase of the litigation."); *Blihovde v. St. Croix Cnty., Wis.*, 219 F.R.D. 607, 621 (W.D. Wis. 2003) (certifying liability class in § 1983 case alleging policy of conducting searches in violation of Fourth Amendment and "stay[ing] a decision whether to certify the issue of damages until after liability is determined").

### B. Comcast Did Not Impact The Court's Ability To Certify Liability Classes

*Comcast* does not change this Court's certification analysis and does not warrant decertifying the liability classes in this case. The plaintiff in that case alleged that Comcast engaged in anticompetitive behavior in violation on the

7

Sherman Act, and set forth four theories of anticompetitive activity that plaintiff believed justified certifying a class pursuant to Rule 23(b)(3). *Comcast*, 133 S. Ct. at 1430-32. "The District Court accepted [one] theory of antitrust impact as capable of classwide proof and rejected the rest." *Id.* at 1431. Plaintiff sought certification for all purposes (both for liability and damages), but did not provide any evidence that damages could be determined on a classwide basis for the one theory that the Court permitted to proceed. *Id.* at 1433. Despite the plaintiff's failure to provide evidence that damages could be determined on a classwide basis, the district court certified a class. The Third Circuit affirmed, holding: that class certification was appropriate because it was possible that damages could be proven on a classwide basis; and that deciding at the class certification stage whether plaintiff ultimately proves damages on a classwide basis would be an impermissible inquiry into the merits of plaintiff's claim. *Id.* at 1431. The Supreme Court reversed, holding that the antitrust class was improperly certified because the plaintiff failed to prove that individualized damages issues would not predominate over classwide issues.

According to the City, after *Comcast*: (1) plaintiffs "may file an individual suit when Constitutional rights are violated, and that case would be adjudicated, but not as part of a class action"; and (2) courts may not certify liability-only classes in any type of case. *See* Dckt. 76 at 20. Put differently, the City contends that the Supreme Court overturned decades worth of decisions certifying both Constitutional class actions and liability classes, without even mentioning any of the substantial body of case law certifying Constitutional class actions, let alone suggesting that it was

8

overturning those cases. *Comcast* does not support those propositions. Nor do any of the five recent cases the City cites to show that some courts have refused to certify classes following *Comcast*. Dckt. No. 76 at 5-6. None of the cases that the City cites warrant decertifying the classes here. For example, the court in *Forrand v. Federal Express Corp.* declined to certify a class because individual issues predominated for liability and for damages, which is not the case here. *Forrand*, 2013 WL 1793951, at *4-5 (C.D. Cal. Apr. 25, 2013). Similarly, the Court in *Smith v. Family Video Movie Club, Inc.* also declined to certify a class where individualized issues regarding liability predominated. *Smith*, 2013 WL 1628176, at *11 (N.D. Ill. Apr. 15, 2013). Unlike those cases, there are no significant individualized issues with respect to liability in this case, as the Court has already determined. Moreover, none of the plaintiffs in the five cases upon which the City relies invoked Rule 23(c)(4) as a basis to certify liability-only classes, unlike Plaintiff and the Classes in this case.

Finally, the City cites a docket entry in another case for the proposition that other "defendants in previously certified classes have begun citing *Comcast* in motions for reconsideration of class certification orders." Dckt. No. 76 at 5-6. That defendants in other cases are citing *Comcast* to argue that classes were improperly certified says nothing about whether the classes in this case were properly certified, or even whether the courts in those other cases will decertify classes.

Importantly, the plaintiff in *Comcast* had never sought certification for liability only, so the Supreme Court did not consider whether certification for that purpose would have been appropriate under Rule 23(c)(4). In short, therefore,

9

*Comcast* has no bearing on cases such as this one, where plaintiffs seek to certify liability-only classes, and classwide issues predominate with respect to liability. *Wallace v. Powell*, Case No. 3:09–cv–286, 2013 WL 2042369, at *19 (M.D. Pa. May 14, 2013) (certifying "Classes for a liability determination under Rule 23(c)(4), a subsection of Rule 23 that was not at issue in Comcast or even mentioned in the majority opinion"); *see also Manno v. Healthcare Revenue Recovery Grp., LLC*, No. 11-61357, 2013 WL 2384245 (S.D. Fla. May 30, 2013) ("The Court also does not agree that the Supreme Court's decision in *Comcast Corp. v. Caroline Behrend* treads any new ground in class action law. That case simply restates rules from *Wal–Mart Stores v. Dukes*, and other prior decisions.") (internal citations omitted).

### C. The Court Should Enter Final Judgment As To Defendant's Liability and Decertify The Classes For Damages Trials

As it was before *Comcast*, class certification for liability issue is still appropriate after *Comcast*, and this Court should enter final judgment against the City for those issues. Indeed, a judge in this District, Hon. Nancy J. Edmunds, recently certified, for liability purposes only, a class of individuals who "allege[d] that Defendants violated their Fourth Amendment rights by following the Michigan Department of Treasury's uniform practice during the relevant time period and entering their property without a judicially authorized warrant and seizing their property in satisfaction of an alleged tax debt." *Miri v. Dillon*, No. 11–15248, 2013 WL 2034310, at *1 (E.D. Mich. May 14, 2013). Just like the City in this case, the defendants in *Dillon* argued that *Comcast* precluded class certification because individual issues predominated the damages questions. Judge Edmunds relied on

the *Comcast* decision in rejecting that argument, noting that "Justices Ginsburg and Breyer recently observed, 'recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal.'" *Id.* at *11, quoting *Comcast*, 133 S.Ct. 1426, 2013 WL 1222646, *9. Recognizing the possibility that *Comcast* could be read to stand for the proposition that courts should not certify a class for all purposes where there is no classwide method to determine damages, Judge Edmunds, out of "an abundance of caution," certified "a class for liability purposes only." *Id.*

That is exactly what Plaintiffs and the Classes seek here, and the outcome in this case should be the same as in *Dillon*, with the Court maintaining the case as a class action for liability purposes, and decertifying it for individual damages determinations. *See id.*; *see also Wallace*, , 2013 WL 2042369, at *19 (certifying liability class for §1983 claim, and noting that "*Comcast's* discussion of the defectiveness of the respondents' damages model when compared to the theories of antitrust impact susceptible to classwide proof does not impact a case such as this where classwide resolution is sought only with respect to liability.").

Because class certification for liability purposes was and still is appropriate, the Court should enter final judgment for the classes as to liability, and then decertify the Classes for damages purposes to permit individual class members to file their own damages lawsuits.

### D. The Defendant Should Be Ordered To Pay For Class Notice

Under Rule 23, the class members are entitled to notice of this case. *See* Fed. R. Civ. P. 23(c); *see also Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007) ("an opt-out class action under Rule 23(b)(3) must meet stringent notice requirements"). Plaintiff respectfully requests that the Court order the parties to meet and confer and prepare an agreed (or at least partially agreed) notice plan to submit for the Court's approval a proposed notice plan that satisfies Rule 23's notice requirements.

The City should be ordered to pay for the costs of notice because the Court has already held that the City is liable to the Classes. *See, e.g., Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1143-44 (9th Cir. 2009) (district court correctly shifted notice costs to defendant after determining that "defendant was liable on the merits," and noting with approval that "many district courts have placed notice costs on the class action defendant once the defendant's liability has been established"); *Hook v. Baker*, No. C2-02-CV-901, 2004 WL 3113717, at *3 (S.D. Ohio Sept. 1, 2004) ("Simply stated, because the Court has already certified the class and determined that defendant is liable to plaintiffs ..., the cost of the notice should be borne by defendant," and collecting cases for same proposition); *Fournigault v. Independence One Mortg. Corp.*, 242 F.R.D. 486, 490 (N.D. Ill. 2007) (ordering defendant to pay notice costs after determining that plaintiffs were likely entitled to summary judgment); 3 William B. Rubenstein, Alba Conte, and Herbert B. Newberg, Newberg on Class Actions § 8:6 (4th ed. 2007) ("interim litigation costs,

including class notice costs, may be shifted to defendant after plaintiff's showing of some success on the merits, whether by preliminary injunction, partial summary judgment, or other procedure").

## II. No Palpable Defect Exists That Warrants Setting Aside The Default And Default Judgment Against The City.

Under Local Rule 7.1, motions to reconsider must be brought within 14 days of the motion for which reconsideration is sought, and timely filed motions should be granted only in narrow circumstances that do not apply here. Defendant's motion comes too late, and lacks merit.

The Court entered default judgment on September 27, 2012 and its order extending the judgment to the Class was issued on February 27, 2013. Dckts. 60, 66. Defendant filed its motion on May 15, 2013. Dckt. 76. Without question, the City's request for reconsideration of the Court's default judgment and its decision to extend the default to the classes is time-barred. Given the delay in filing its motion, Defendant's request to set aside the default and default judgment should be denied as untimely. *Bond v. U.S. Mfg. Corp.*, 09-11699, 2010 WL 4825286, *2 (E.D. Mich. Nov. 22, 2010) (motion for reconsideration filed three days after the 14-day period denied as untimely).

Even if the Court were to consider the City's motion on the merits, it should be rejected. As this Court has explained:

> A motion for reconsideration will be granted if the moving party shows: (1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case. A palpable defect is obvious, clear, unmistakable, manifest, or plain. Motions for rehearing or reconsideration which merely present

13

the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted.

*Toner v. Vill. of Elkton*, 11-10835, 2012 WL 5947605, at * 2 (E.D. Mich. Nov. 28, 2012) (Ludington, J.) (internal quotations and citations omitted). The City does not come close to satisfying this standard.

### A. The Consent Decree Does Not Take Away Private Citizens' Rights to Seek Relief from the City for Unconstitutional Police Practices

The class is not claiming rights or seeking relief under the Consent Decree. Instead, the classes' claims are based on the City's deprivation of class members' Constitutional rights. The Fourth and Fourteenth Amendments protect pre-trial detainees from conditions that amount to punishment, including deprivation of mattresses for overnight detainees, and a failure to present individuals arrested and detained without a warrant to a judge for a probable cause hearing within 48 hours of arrest. The City must be held accountable for violating the class members' rights. The Consent Decree does not relinquish citizen's rights to seek relief from the City's egregious constitutional violations. *See* Exhibit 1 of dckt. 76: Paragraph 11 of Consent Decree ("This Agreement is not intended to impair or expand the right of any person or organization to seek relief against the City or its officials, employees or agents for their conduct or the conduct of DPD officers; accordingly, it does not alter legal standards governing any such claims…").

Further, the class is not asserting the City's entry into the Consent Decree makes it liable for the claims alleged in the complaint. Rather, the Consent Decree provides an anecdote to the complaint and gives the reader of the complaint some context as to what this lawsuit is about, similar to mentioning news articles or

14

previous lawsuits in a complaint, both of which are permissible. *E.g.*, *Jones v. Murphy*, 470 F.Supp.2d 537, 546 (D. Maryland 2007)(Specific allegations of in the complaint demonstrated through "series of reports, newspaper articles, and court cases dating back many years" is sufficient to survive a motion to dismiss").

Defendant's contention that Paragraph 11 prohibits any party from ever citing the Consent Decree against the City, dckt. 76 at 13, has already been rejected by the Court that is charged with monitoring the Consent Decree.² Specifically, in *Floyd v. City of Detroit, et al.*, 04-cv-72199, the plaintiff submitted the Consent Decree as evidence in response to the City's summary judgment motion on his *Monell* claim. (Exhibit 2: Pltf. Supp. SJ Resp. in *Floyd v. City of Detroit*, 04-cv-72199, dckt. 26). As it does here, the City objected to the court's consideration of the Consent Decree, raising the same arguments it does here. (Exhibit 3: Def. Supp. SJ Reply in *Floyd v. City of Detroit*, 04-cv-72199, dckt. 30, at ¶ 4 ("Paragraph 11 of the 'Consent Decree' specifically prohibits any third party, particularly the Plaintiff, from using the 'Consent Decree' in any other litigation.") (emphasis omitted)); (Exhibit 4: SJ Hr'g Tr. in *Floyd v. City of Detroit*, 04-cv-72199, dckt. 41, at 22-23) ("[T]he ruling was that it couldn't be [sic] used by third parties, it couldn't be used in civil lawsuits…"). The court rejected the City's request to strike the Consent Decree from the record, instead taking the Consent Decree into consideration when denying the City's motion. (Exhibit 4 at 28-29).

---

² Both *Floyd v. Detroit* and *United States v. City of Detroit* are presiding before the Honorable Julian Abele Cook. *See* Exhibit 1: Docket Sheets for *Floyd v. Detroit,* 04-72199 and *United States v. City of Detroit, et al.*, 03-72258).

15

Further, the *Johnson* case Defendant cites to support its proposition that Court may not consider the Consent Decree provides no such support, as the agreement at issue in *Johnson* prohibits use of the agreement as <u>evidence</u> in other proceedings, Exhibit 4-A of dckt. 76 at 3, whereas the Consent Decree at issue here proscribes the use of the agreement <u>to assert a claim or right as a purported third-party beneficiary of the Consent Decree</u>, Exhbits 1 and 2 of dckt. 76. Moreover, the plaintiff in the *Johnson* case sought to use the agreement against defendant Cincinnati at trial, and the issue being decided was whether admitting the agreement satisfied the Rules of Evidence. By contrast, because the City was in default here, the Classes' allegations concerning the Consent Decree were properly deemed admitted. This Court was not misled when Plaintiff cited to the Consent Decree in his Complaint.

### B.  Previously-Available Information About Foam Padded Benches And Suicide Risks Does Not Warrant Revisiting This Court's Prior Rulings

Defendant submits an affidavit from Commander Jeffrey Romeo to explain that some of the cells in two of the Detroit Police Department ("DPD") facilities contain foam padded benches; that prior to 2003, the DPD had significant number suicides in its facilities; and that it has since put in place policies that effectively eliminated this problem. Exhibit 4 of dckt. 76 at ¶¶ 15-19. The City provides no explanation why it waited until now to submit this information; particularly when it has already submitted two affidavits from Cmdr. Romeo in this case and the subject matters contained in those affidavits are directly aligned with the new information the City is looking to submit. *See* Exhibit 1 of dckt. 36 Ex. 1 and

16

Exhibit B of dckt. 63. Because there are no good reasons for why the City did not submit this previously-available information earlier, the Court should decline to consider this affidavit (and the other two affidavits attached to Defendant's motion). *Sommer v. Davis,* 317 F.3d 686, 691 (6th Cir. 2003); *see also Basinger v. CSX Transp., Inc.,* 91 F.3d 143 (6th Cir. 1996) (the district court did not abuse its discretion by refusing to consider the additional evidence earlier when the evidence was available earlier and the plaintiff failed to explain why it was not previously submitted).

Even if this Court considers the additional evidence, the default and default judgment still stand. Facts supporting or rebutting the allegations in the complaint are immaterial when entering a default as a discovery sanction, as it was done here. Once in default, all well-pleaded factual allegations, e.g., "[t]here is no bed or bunk to sleep on", were deemed true. Dckt. 1 at ¶19. By definition, in extending the default judgment to the class, the Court necessarily relied on the factual allegations, not the evidence in the case. Thus, information about foam-padded benches would not have changed the Court's previous rulings.

Guarding against suicide risks is unquestionably a legitimate government interest. Dckts. 64 at 2, 66 at 18. As with its initial brief, however, the City fails here to explain how depriving every individual in its custody of a mattress is rationally related to government interest in preventing suicides.

The belated evidence regarding foam padded benches or suicide risks do not alter any of the Court's previous rulings.

17

      C.      **Defendant's After-the-Fact Discovery Compliance Should Not Result In Setting Aside The Default And Default Judgment**

The Court was aware of Defendant's unsatisfactory "attempts" to comply with its discovery obligations and was right to be dissatisfied with those efforts leading to the default entry. In each of Plaintiff's motions to compel or for sanctions, Plaintiff outlined the efforts taken by both parties during discovery. Dckts. 14, 19, 25. If the City felt that Plaintiff's motions unfairly characterized its actions (which they did not), it should have filed a response at that time. Moreover, the City certainly made the Court aware of its efforts in its first motion to set aside the default. Dckt. 29. In declining to set aside the default, the Court pointed out that if the Defendant was overwhelmed by the discovery requests or if it felt that some of Plaintiff's requests were improper, the City could have filed discovery motions to address these issues, but it did not. Dckt. 33 at 3. The City chose to ignore its obligations instead, leaving the Court with a default as its only means to enforce its Orders and ensure proper adjudication of Plaintiffs' claims.

Following the default, this Court directed the parties to provide supplemental briefing to address issues involving class size, class certification, and scope of Defendant's liability. In order to properly brief these issues, Plaintiff required certain documents responsive to the still outstanding discovery requests. Plaintiff's counsel worked with defense counsel, Cmdr. Romeo, and other City personnel to obtain the information needed. The Defendant's belated attempt to place resources to meet its discovery obligations after its default does not undo its previous deficiencies and should not alter any of this Court's prior rulings.

## Conclusion

For these reasons, Plaintiff requests that the Court deny Defendant's Motion for Reconsideration, dckt. 76, enter final judgment as to liability for the Classes, direct that the Classes receive notice at the Defendant City of Detroit's expense, and decertify the Classes for damages.

Respectfully Submitted,

/s/ Cindy Tsai
Attorneys for Plaintiff


Arthur Loevy
Michael Kanovitz
Jon Loevy
Cindy Tsai
LOEVY & LOEVY
312 North May St., Suite 100
Chicago, IL 60607
Telephone:(312) 243-5900
Facsimile:(312) 243-5902

David L. Haron (P14655)
Mercedes Varasteh Dordeski
Foley & Mansfield
130 East Nine Mile Road
Ferndale, IM 48220
Telephone: (248) 721-4200


## Certificate of Service

I, Cindy Tsai, hereby certify that on Monday, June 17, 2013, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

/s/ Cindy Tsai