UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHNATHAN AARON BROWN,

                    Plaintiff,                           Case No. 10-cv-12162
v                                               Honorable Thomas L. Ludington

CITY OF DETROIT,

                    Defendant.

_____/

## ORDER DENYING MOTION FOR RECONSIDERATION AND DENYING REQUEST FOR CLASS DECERTIFICATION

Plaintiff Jonathan Aaron Brown was arrested without a warrant on September 21, 2007, in the city of Detroit.  He claims that he was mistreated while in custody: that he was held for about 60 hours with no mattress, that he was not provided a probable cause hearing before a neutral magistrate, and that he was not provided two meals a day.  Asserting that Defendant City of Detroit routinely treats arrestees this way, Brown filed suit on behalf of himself and thousands of others.

On April 28, 2011, the Court entered a default as to liability against the City of Detroit.[1] ECF No. 27.  The Court denied the City's subsequent motion to set aside the default as to liability because it determined that the "sanction remain[ed] necessary to advance the case." ECF No. 33.  After multiple rounds of briefings, the Court granted class certification to two classes: Class I consisted of those arrestees who had been detained "overnight"[2] without a mattress/pillow/blanket and Class II consisted of those arrestees who had been detained for

---

[1] "The Court noted that Defendant had still not responded to Plaintiff's motion  [for sanctions] despite its obligation to do so . . . .  The Court also emphasized its intent to accelerate the progress of this case, and that Defendant's nonresponsiveness would not be tolerated.  After the Court entered the order, Defendant still did not respond to Plaintiff's motion [for sanctions].  Defendant also did not appear for the hearing, which demonstrates that Defendant is no longer interested in defending this case."  ECF No. 27 at 2.

[2] "Although it is not immediately obvious what precise period of time "overnight" refers to, neither party asserts that the term is ambiguous."  ECF No. 66 at 5.

longer than 48 hours without a determination of probable cause.[3]   In certifying these classes, however, the Court made clear that it was certifying for liability purposes only; that is, the Court bifurcated the issues of liability and damages as permitted by Rule 23(c)(4).  After a careful and extensive review of the City's records, Plaintiff believes that there are approximately 160,000 people in Class I and 40,000 in Class II with some overlap between the two classes.  The Court further determined that the default ran to both putative classes, ECF No. 60, and determined that the City had conceded liability for both classes.

On May 15, 2013, the City filed a motion for relief from the default order or for reconsideration of class certification. [4] ECF No. 76.  The City requests two forms of relief in its motion: (1) that the default should be set aside, and (2) that the classes should be decertified in light of *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013).  *Id*.

# I

The first form of relief request—setting aside the default—is essentially a request for reconsideration of this Court's previous decision denying the City's request to set aside the default.   In the previous decision declining to set aside the default, the Court noted that "Defendant [City of Detroit] has not identified a meritorious defense or explained why its culpable conduct should be excused."  ECF No. 33 at 3.

The Order denying the City's request to set aside the default was entered on the docket on May 16, 2011.  Two years later, on May 15, 2013, the City filed its motion for reconsideration, again seeking to set aside the default.  The City's request for reconsideration is out of time, to

---

[3] The Court declined to certify a third class of "All persons detained by the [City of Detroit Police Department] in excess of 24 hours [who] did not receive at least two meals at any time from May 27, 2007 to the present."  Comp. ¶ 50.  At the time of our certification Order, the "parties have informally agreed to defer resolution of Class III," and it appears that this question was never addressed again.  Op. & Order 30, ECF No. 60.

[4] On August 22, 2013, this Court stayed the proceedings because the City filed bankruptcy.  Order, ECF No. 86.  On July 30, 2014, the City notified the Court that the bankruptcy stay had been lifted to allow the liquidation of Plaintiff's claim.  Notice, ECF No. 88.

say the least.  Eastern District of Michigan Local Rule 7.1(h) provides that "[a] motion for rehearing or reconsideration must be filed within 14 days after entry of the judgment or order." Here, the City filed its motion for reconsideration two years after the entry of the order— approximately 698 days too late.  Accordingly, to the extent that the City seeks reconsideration of the May 16, 2011 denying its motion to set aside the default, the City's motion will be denied as untimely.

## II

As part of its motion for reconsideration, the City seeks decertification of two classes in this case.  Unlike the request to reconsider setting aside the default, this request is timely because this Court has a continuing duty to monitor the decision on class certification and amend or alter the decision as needed in light of case developments.  *Daenzer v. Wayland Ford, Inc.*, 210 F.R.D. 202, 205 (W.D. Mich. 2002) (citing *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983)).

## A

The City claims that, in light of the Supreme Court's decision in *Comcast v. Behrend*, decertification of the two classes is required. In particular, the City contends that *Comcast* prohibits a court from bifurcating liability from damages when determining whether to certify a class.  Bifurcation of liability is a common technique where, as here, the individual damages calculation would be too varied and individualized to be common to the entire class.  Indeed, bifurcation was utilized in the Court's previous order granting class certification.  *See* Order 2, ECF No. 60 ("[T]he first two proposed classes will be certified. . . . Damages and liability will be bifurcated.").

Not only does *Comcast* prohibit bifurcation of damages and liability, the City continues, to satisfy the Rule 23(b)(3) predominance requirement, *Comcast* requires a showing of class-wide measurable damages.  The City alleges that the individual damages in the present case are too varied to permit class certification:

> Moreover, to the extent that Brown or other members have any possible claim for actual damages, they are unique and highly individualized.  Some detainees may have been held for 49 hours, while Brown claims to have been held for 60 hours.  Some detainees may have missed work because of their detention, while others (presumably Brown) did not.  Some, due to unique physical conditions, may have suffered some physical injury by sleeping without a mattress.  The members of the class cannot show that they all suffered the same injury; indeed, most will be unable to establish any injury.[5]  It is exactly these types of individual damage calculation that *Comcast* prohibits for class certification.

Def.'s Supp. Br. 15, ECF No. 94.

In summary, the City first claims that this Court may no longer bifurcate the issue of liability from damages when determining whether to certify a class, as it did in its previous order.  And because this case involves highly individualized damages that cannot be evaluated on a class-wide basis, the City next claims that common issues do not "predominate" thereby defeating class certification.  Both of the City's arguments are unpersuasive and contradicted by subsequent Sixth Circuit cases applying *Comcast*.

**B**

As noted above, this Court bifurcated the issue of liability from the issue of damages when certifying Class I and Class II for liability only.  Rule 23(c)(4) gives litigants the option, "when appropriate," to bring or maintain a class action only with respect to particular issues.  Fed. R. Civ. P. 23(c)(4).  Prior to *Comcast*, the Sixth Circuit endorsed the use of that rule to

---

[5] Even though we limited the supplemental briefs to "updates to the controlling law," the City appears to be seeking dismissal by repeatedly claiming that Plaintiffs have no cause of action and no damages: "But even assuming the allegations [in the Complaint] are true, they at most demonstrate that Brown's alleged overlong detention (12 hours beyond the 48-hour guideline) left him sleepy and hungry."  Def.'s Supp. Br. 1.  Accordingly, those portions of the City's supplemental brief will be disregarded.

bifurcate proceedings by certifying the liability aspects of a proposed class action while leaving damages determinations to individual hearings.  *See Olden v. LaFarge Corp.*, 383 F.3d 495, 509 (6th Cir. 2004) ("As the district court properly noted, it can bifurcate the issue of liability from the issue of damages, and if liability if found, the issue of damages can be decided by a special master or by another method.") (citing Fed. R. Civ. P. 23(c)(4)(A)).

But even after *Comcast*, the Sixth Circuit has emphasized that bifurcating liability from damages is still a viable approach.[6]  "Where determinations on liability and damages have been bifurcated, *see* Fed. R. Civ. P. 23(c)(4), the decision in *Comcast*—to reject certification of a liability and damages class because plaintiffs failed to establish that damages could be measured on a classwide basis—has limited application."  *Whirlpool*, at 860. "[N]o matter how individualized the issue of damages may be, determination of damages may be reserved for individual treatment with the question of liability tried as a class action," a position that it said held true even when some consumers may have no harm at all.  *Id*. at 853-55 (internal quotation marks omitted).  In other words, the Sixth Circuit held that the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).  *Whitlock v. FSL Management, LLC*, 2013 WL 5656100, at *4 (W.D. Ky. Oct. 16, 2013) (citing *In re Whirlpool Corp.*, 722 F.3d at 845; *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796 (7th Cir. 2013).  The Sixth Circuit's holding is in line with sister circuits; as the Seventh Circuit explained:

> It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages.  If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical

---

[6] The City argues that this Court should disregard *Whirlpool* for two reasons: (1) it was decided by a two-judge panel after Judge Kennedy retired; and (2) it directly contradicts Supreme Court precedent in *Comcast*—although the Supreme Court denied certiorari with respect to the subsequent *Whirlpool* decision, which analyzed the applicability and effect of *Comcast*.

> across all class members should not preclude class certification.   Otherwise
> defendants would be able to escape liability for tortious harms of enormous
> aggregate magnitude but so widely distributed as not to be remediable in
> individual suits.

*Butler*, 2013 WL 4478200, at *5.

Accordingly, bifurcation pursuant to Rule 23(c)(4) continues to provide a viable solution if damages cannot be determined on a class-wide basis, so long the proposed class satisfies the requirements of Rule 23(a) and (b) with respect to liability.

In the present case, the Court previously determined that common issues regarding Defendant's liability for civil rights violations predominate over any potential individual damages issues with respect to Rule 23(a) and (b).  *See* ECF No. 60.  While recognizing that class members may have differing damages or individual damages issues, these individualized damages questions do not warrant decertification of the class for liability purposes in light of the Court's previous opinion.  As noted by the Sixth Circuit, "it remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members."  *Whirlpool*, at 861.  Resolution of the common questions related to whether Defendant had a policy or practice of detaining arrestees for over 48 hours without probable cause or a policy or practice of withholding mattresses from arrestees held overnight will answer the threshold liability issue and will clearly advance the litigation.  Thus, in this Court's view, *Comcast* and *In re Whirlpool Corp.* stand for the proposition that bifurcating the issues of liability and damages is appropriate where it will remedy any problems surrounding individualized proof of damages.

As explained in our earlier Orders, certifying Plaintiff's proposed liability classes will materially advance the litigation and make the proceedings more manageable.   By

litigating/defaulting these issues on a classwide basis, both the parties and the Court can avoid

the extreme time and expense necessary to adjudicate each class member's claims individually.

Because Defendant has defaulted on Plaintiff's claims, the only remaining questions at

this point are the amount of damages available. Fortunately, the Court has a number of

management tools at its disposal to help resolve these issues. For example, the Court could

appoint a special master to preside over individual damages proceedings, conduct sample trials,

or even decertify the class after the liability phase and provide notice to plaintiffs as to how to

proceed to prove damages. *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 231 (2d Cir.

2006).

Continued certification of Class I and Class II for liability purposes is appropriate,[7] and

therefore the City's request to decertify the classes will be denied.

### III

Accordingly, it is **ORDERED** that Defendant City of Detroit's motion for

reconsideration and for decertification (ECF No. 76) is **DENIED**.

> s/Thomas L. Ludington
> THOMAS L. LUDINGTON
> United States District Judge

Dated: December 12, 2014

---

[7] The City also contends that the class should be de-certified because the Complaint improperly references a 2003 Consent Decree that noted the various constitutional violations. This argument is nonsensical and does not affect the certification issue. The Consent Decree was referenced in the Complaint to show that the constitutional violations had been brought to the City's attention in the past. It was not considered in analyzing any question of liability for any of the "current" violations in the lawsuit:

> This very practice [of constitutional violations] was documented seven years ago in an investigation by the Department of Justice, which ultimately resulted in a consent decree entered into in 2003. . . . [which] put Detroit's policymakers on notice that the unlawful policies and pattern of constitutional violations has continued.

Compl. ¶¶ 15-16. Indeed, the Complaint then alleges independent facts that would state a cause of action, even without reference to the 2003 Consent Decree.

- 8 -

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 12, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS